## 65744. DAWSON v. THE STATE.

POPE, Judge.

Defendant was indicted, tried and convicted of aggravated assault in the shooting of his estranged wife. The evidence showed that the automobile the victim was driving was stopped by a black male who, after making what appeared to be efforts to get into the car, pulled a pistol and shot her in the face. He then walked back to his own car and drove away. The victim was unconscious when the police arrived, but five witnesses were on hand to give a description of the assailant and his car, including the tag number. Defendant was observed in the car approximately an hour later. He was arrested, taken into custody and later identified by the witnesses. While in custody he signed a waiver of rights form, and he consented to a search of his car and home.

What followed may aptly be described as a comedy of errors. In searching defendant's home the police found a .38 caliber revolver under his bed. The gun apparently had been fired recently. The police, however, lost it before any tests could be run on it. A parafin test was made on defendant's hands and a pair of gloves found in his possession. The police lost both the test kit and the gloves before the

tests could be run at the crime lab. The witnesses were shown an array of six photographs in a photographic line-up, from which they identified defendant. The state produced what it believed to be the photographs at the pretrial motion hearing, but later learned they were not the ones and withdrew them. At trial the jury was made aware of the lost gun, gloves and parafin test kit, but there was no testimony regarding the photographic line-up.

The inadvertence of the police and the state (nearly tantamount to irresponsibility) nevertheless did not destroy their case. Defendant was identified in court by five eyewitnesses. The victim identified defendant as the man who had stopped her car, but she could not recall actually being shot. The state also presented another witness to the shooting, the son of defendant and the victim, and the police officers involved in the case. Defendant presented an alibi defense. The jury found him guilty and the trial court sentenced him to ten years. Defendant now appeals, asserting twelve enumerations of error.

1. The usual general grounds are raised in the first enumeration of error. They are not supported by argument or citation of authority; therefore, they are deemed abandoned under Court of Appeals Rule 15(c)(2). *Pressley v. State,* 158 Ga. App. 638 (1) (281 SE2d 364) (1981).

2. In defendant's second and third enumerations of error he asserts that the trial court erred in denying his plea in abatement as to the indictment and his motion to dismiss the indictment, both based upon the fact that one of the grand jurors listed on the indictment was not on the grand juror list for the term. One Claire Ehler was listed on the indictment but her name appeared neither on the list of grand jurors for that term nor on the county list of registered voters. The state explained to the trial court that she had been called for the previous term but had been excused until the following term. Her name appeared on the list for that previous term as well as on the master list. The state further attested that she was registered to vote under her married name, Mrs. Carroll Ehler, Carroll being her husband's first name.

As a general rule, a grand jury challenge must be made prior to the return of the indictment or it is deemed waived. *Cunningham v. State,* 248 Ga. 558 (1) (284 SE2d 390) (1980), cert. den., 455 U. S. 1038 (1982); *Sanders v. State,* 235 Ga. 425, 426 (219 SE2d 768) (1975), cert. den., 425 U. S. 976 (1976); compare *Walraven v. State,* 250 Ga. 401 (1) (297 SE2d 278) (1982). The exception to the rule is where the defendant can show that he had neither actual nor constructive notice of the alleged illegality prior to that time. *Sanders v. State,* supra; see also *Sullivan v. State,* 246 Ga. 426 (271 SE2d 823) (1980);

*Hamby v. State,* 243 Ga. 339 (1) (253 SE2d 759) (1979); *Holsey v. State,* 235 Ga. 270 (2) (219 SE2d 374) (1975). The omission of the challenged grand juror's name from the grand juror list for the term prevented defendant from challenging her prior to the return of the indictment and therefore, under the authorities cited above, it was permissible for him to challenge her afterward.

This, however, is only the procedural step. The substantive step is the presentation of the alleged illegality with supporting facts, argument and citation of authority. Apparently believing that the absence of the grand juror's name on the grand juror list itself constituted sufficient ground to quash the indictment,[1] defendant did not proceed to the second step; that is, he did not attempt to show that she was not qualified to serve. The state showed that she was registered to vote in the county and, without any showing to the contrary, we presume that the other qualifications of OCGA § 15-12-60 (formerly Code Ann. § 59-201) were met. See generally *Simpson v. State,* 100 Ga. App. 726 (1) (112 SE2d 314) (1959).

3. "[Defendant] objected to testimony relating to previous incidents of animosity between the [defendant] and victim on the ground that it was not relevant to any issue in the case. A trial court does not err in admitting evidence of a previous difficulty between a defendant and victim which illustrates the state of feeling between them. *Evans v. State,* 227 Ga. 571 [(4)] (181 SE2d 845) (1971)." *White v. State,* 242 Ga. 21, 22 (4) (247 SE2d 759) (1978); see also *Milton v. State,* 245 Ga. 20 (262 SE2d 789) (1980). The fact that one of the incidents testified to in the case at bar occurred some eleven years prior to the shooting is a factor bearing on the weight, not the admissibility, of the evidence. See *Jester v. State,* 250 Ga. 119 (2) (296 SE2d 555) (1982) and cits.; see also *Wells v. State,* 135 Ga. App. 421 (218 SE2d 131) (1975).

4. Defendant next contends that the trial court erred in allowing the in-court identification of him by the witnesses. Defendant, however, failed to raise any objection to the in-court identification at trial and therefore he cannot raise it on appeal. *May v. State,* 159 Ga. App. 565 (2) (284 SE2d 70) (1981).

Defendant had moved for suppression of the pretrial photographic identification and, after the state advised him and the trial court that the photographs produced to the court were not the ones viewed by the witnesses, defendant moved for a mistrial. The trial court ruled that loss of the photographs precluded the state from

---

[1] In this regard, we note that the case cited by defendant, *Bazemore v. State,* 28 Ga. App. 556 (112 SE 160) (1922), does not support his argument to the contrary.

making any reference in the presence of the jury to the photographic identifications. The court then stated it would allow in-court identifications. Defendant neither voiced an objection then nor when the witnesses testified. We therefore reject his contentions raised now for the first time on appeal.

5. Defendant contends that the trial court erred in denying his motion for mistrial based upon the state's failure to provide him with copies of scientific tests, referring to the paraffin test and the ballistics test. This contention is without merit. The ballistics test was never made and the paraffin test kit was lost before the test could be run. (We pause to note that a ballistics test would have been useless because the bullet remained lodged in the victim's neck.) A Brady violation occurs only when the state withholds exculpatory information in its possession from the defendant. Brady v. Maryland, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963); Hines v. State, 249 Ga. 257 (1) (290 SE2d 911) (1982). The state did not withhold any information; the police lost it. Therefore, defendant has failed to show how his case has been materially prejudiced by the state's failure to turn this "information" over to him. See Tribble v. State, 248 Ga. 274 (1) (280 SE2d 352) (1981).

Although defendant based his motions upon Brady v. Maryland rather than OCGA § 17-7-211(b) (a "1303" motion under former Code Ann. § 27-1303), we have considered his contention under that statute and, inasmuch as the state had no written scientific reports in its possession to be introduced at trial, there was no error under this approach. See Law v. State, 165 Ga. App. 687, 698 (3) (302 SE2d 570) (1983). We note further that even if there had been a violation by the state, the remedy would have been exclusion of the evidence rather than a mistrial. OCGA § 17-7-211(c) (Code Ann. § 27-1303).

6. In defendant's last two enumerations of error he contends that the trial court erred in allowing testimony regarding the revolver found in his apartment. He claims that his consent to search was not given voluntarily. We find that the state met its burden of showing that the consent was in fact given voluntarily. See Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973); Code v. State, 234 Ga. 90 (3) (214 SE2d 873) (1975); see also McShan v. State, 155 Ga. App. 518 (2, 3) (271 SE2d 659) (1980).

*Judgment affirmed. Quillian, P. J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED MAY 4, 1983.

B. Michael Mears, for appellant.

Robert E. Wilson, District Attorney, Robert E. Statham III, Assistant District Attorney, for appellee.